GARWOOD, Circuit Judge:
This appeal stems from an adversary proceeding brought by the trustee of the bankruptcy estate of Shearn Moody, Jr. against Seaside Lanes, a Texas partnership, and its general partners, Shearn Moody, Jr., Robert Moody, and Frances Moody Newman. The trustee sued to compel Seaside Lanes to turn over the cash value of Shearn Moody, Jr.’s alleged interest in the partnership, to dissolve and wind up the affairs of the partnership, and to render an accounting of the partnership’s assets and liabilities. The partners appealed from a bankruptcy court order declaring that the partnership had been dissolved by the bankruptcy filing of Shearn Moody, Jr. and purportedly granting the trustee’s request for an accounting and winding up, which the court stated “should proceed in accordance with the Texas Uniform Partnership Act,” but further providing that “if *83 the Trustee, Mrs. Newman, and Robert Moody cannot arrive at a suitable resolution, they may seek a court order on the winding up and accounting.” The district court dismissed the appeal as interlocutory. Partners Robert Moody and Frances Moody Newman now appeal from the district court’s dismissal, arguing that the bankruptcy court’s order was a final order appealable as of right. We disagree with the appellants and therefore affirm the district court’s dismissal of their appeal.
Facts and Proceedings Below
In December 1963, Shearn Moody, Jr. entered a written partnership agreement with Robert Moody, his brother, and Frances Moody Newman, his mother. The agreement stated that the parties had formed a partnership, Seaside Lanes, to own and manage real estate acquired by them as a function of their status as beneficiaries under the last will and testament of Shearn Moody, Sr. According to the partnership agreement, Shearn Moody, Jr. and Robert Moody each held a 37.5 percent interest in the partnership profits, and Frances Moody Newman had a 25 percent interest.
At the time of its formation, the sole asset of Seaside Lanes consisted of real property and improvements located on “Outlot 162” in Galveston County, Texas. On Outlot 162 were a bowling alley, a service station, and an office building. On May 14, 1984, Seaside Lanes sold the bowling alley, its most valuable asset, for approximately $500,000. The partners deposited the sale proceeds in a certificate of deposit at Moody National Bank. After that certificate of deposit and a subsequent one (into which it had been “rolled”) matured, in December 1984 the funds were transferred into the Seaside Lanes checking account at the Bank of Galveston to be available for making periodic disbursements to the partners. On December 24, 1984, Shearn Moody, Jr. withdrew $201,000 from the Seaside Lanes checking account, which represented his 37.5 percent share of the partnership profits for 1984. Later that month, Robert Moody and Frances Moody Newman also withdrew their respective shares of the partnership’s 1984 profits.
Meanwhile, on June 6, 1983, Shearn Moody, Jr., had filed a Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. He subsequently dismissed that proceeding and on November 13,1983, filed another Chapter 13 petition in North Carolina. After this proceeding was converted to a Chapter 11 bankruptcy and a trustee was appointed, venue was transferred to the Southern District of Texas. Thereafter, on March 13, 1985, the bankruptcy court in Texas appointed plaintiff-appellee W. Steve Smith (trustee) as successor trustee for Shearn Moody, Jr.’s bankruptcy estate.
On September 9, 1985, the appellee trustee filed an adversary “Complaint and Application for Accounting and Turnover of Funds” against Seaside Lanes and its partners. The complaint alleged that Shearn Moody, Jr.’s interest in the Seaside Lanes partnership was property of the bankruptcy estate and requested the court to order (1) a dissolution and winding up of the affairs of the partnership, (2) an accounting of the partnership’s assets and liabilities, and (3) a turnover of the net value of Shearn Moody, Jr.’s interest in the partnership to the trustee. In opposition, the defendants asserted that Shearn Moody, Jr. had on April 1, 1980 transferred all of his interest in Seaside Lanes to a trust created by him on that date (April 1, 1980 Trust) and with respect to which he was the sole trustee, but not a beneficiary; that he had received the Seaside Lanes profits for 1984 solely in his capacity as trustee of the April 1,1980 Trust; and that he therefore had no ownership interest in Seaside Lanes to which the bankruptcy trustee could succeed. The defendants also took the position that by agreement of the partners, subsequent to the May 1984 sale of the bowling alley the Seaside Lanes partnership had been dissolved and its affairs wound up, and, consequently, that a court order for an accounting and winding up of partnership affairs would be inappropriate.
*84 Following a hearing, on October 27,1986, the bankruptcy judge in a document entitled “Memorandum and Order” issued written “Findings of Fact” and “Discussion and Conclusions of Law,” in which she concluded that Shearn Moody, Jr. had conveyed neither his interest in the Seaside Lanes partnership nor any of the partnership’s property to the April 1, 1980 Trust and that his interest in the partnership was therefore property of his bankruptcy estate. She further concluded that by virtue of the Texas Uniform Partnership Act, dissolution of the Seaside Lanes partnership had commenced upon the bankruptcy filing of Shearn Moody, Jr. rather than upon the subsequent sale of the bowling alley, as the defendants had argued, but that in any event the winding up of the affairs of Seaside Lanes remained uncompleted. The October 27, 1986, “Memorandum and Order” contains the only order or decree of the bankruptcy court sought to be appealed in this case. The only portion of this “Memorandum and Order” that can be said to constitute a judgment, order, or decree is the last paragraph thereof, reading as follows:
“The dissolution of the partnership occurred upon Debtor’s filing of the petition in bankruptcy. Texas Uniform Partnership Act, Art. 6132b-31. The Trustee’s request for accounting and winding up is granted and should proceed in accordance with the Texas Uniform Partnership Act. If the Trustee, Mrs. Newman, and Robert Moody cannot arrive at a suitable resolution, they may seek a court order on the winding up and accounting of the Seaside Lanes partnership affairs.
“It is so Ordered.”
The defendants filed a notice of appeal from the bankruptcy judge’s “Memorandum and Order,” which the bankruptcy trustee opposed in a motion to dismiss the appeal as interlocutory. Robert Moody and Frances Moody Newman (but not Shearn Moody, Jr.) countered by filing a memorandum in response to the trustee’s motion to dismiss and, in the alternative, a motion for leave to file an appeal of an interlocutory order. In an order dated February 12, 1987, the district court dismissed the appeal on the grounds that the bankruptcy court’s Memorandum and Order sought to be appealed from was an interlocutory order, not appealable as of right, and that “no grounds exist[ed] sufficient for the Court to grant leave” for an interlocutory appeal. From that dismissal, Robert Moody and Frances Moody Newman (collectively appellants) have timely appealed to this Court.
Discussion
The sole issue raised on this appeal is whether the district court erred in dismissing the partners’ appeal from the October 27, 1986, Memorandum and Order of the bankruptcy court as an interlocutory order not appealable as of right.[1] The appellate jurisdiction of a district court over an appeal from a bankruptcy court order is prescribed by 28 U.S.C. § 158(a). This section gives “[t]he district courts of the United States ... jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of ... title [28].” Section 158(a) thus makes finality a prerequisite to appealability as a matter of right to a district court from a bankruptcy court order. Consequently, to determine whether the district court properly dismissed the partners’ appeal,[2] we must determine whether the *85 bankruptcy court’s October 27 order was final for purposes of taking an appeal under 28 U.S.C. § 158(a).
We recognize that courts properly view finality for purposes of appellate jurisdiction more flexibly in the context of bankruptcy cases than in ordinary civil proceedings.[3] See, e.g., ITT Diversified Credit Corp. v. Lift & Equip. Serv., Inc. (In re Lift & Equip. Serv., Inc.), 816 F.2d 1013, 1015-16 (5th Cir.1987); Foster Securities, Inc. v. Sandoz (In re Delta Servs. Indus.), 782 F.2d 1267, 1269 (5th Cir.1986). In accordance with this approach, it is generally held that a separate adversary proceeding within the framework of the overall bankruptcy case is an appropriate “judicial unit” for determining finality pursuant to section 158(a). See Smith v. Revie (In re Moody), 817 F.2d 365 (5th Cir.1987); see also 16 C. Wright, A. Miller, E. Cooper & E. Gress-man, Federal Practice & Procedure § 3926 (1977 & Supp.1986). Thus, even though the bankruptcy case may continue, an order disposing of such a proceeding is appealable as a final order. We therefore likewise conclude that the proceeding involved in this case, in which the trustee sought to compel the partners of Seaside Lanes to wind up the partnership’s affairs, render an accounting of partnership assets and liabilities, and turn over the cash value of Shearn Moody, Jr.’s partnership interest, presents such a discrete judicial unit.[4]
Our determination that the matter encompassed by the trustee’s complaint in this case constitutes a separate judicial unit for finality purposes does not end the inquiry, however. As in ordinary civil cases, for a decision or order entered in a proceeding to be final, it must generally be one that “ends the litigation ... and leaves nothing for the court to do but execute the judgment.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)); accord, e.g., Lift & Equip. Serv., 816 F.2d at 1016. Even in a bankruptcy case, for an appeal as of right to lie pursuant to section 158(a), there must be a “ ‘final determination of the rights of the parties to secure the relief they seek in this suit.’ ”[5] County Management, Inc. v. Kriegel (In re County Management, Inc.), 788 F.2d 311, 313 (5th Cir.1986) (quoting In re Emerald Oil Co., 694 F.2d 88, 89 (5th Cir.1982)). Where, as here, parties bring multiple claims or seek multiple forms of relief in a single adversary proceeding, as a *86 general rule finality for appeal purposes does not occur until the court has settled all the issues pending between the parties in that proceeding.[6]
In this case that requirement has not been met. The trustee sued not only to compel Seaside Lanes to wind up its affairs and render an accounting, but also to force the partnership to turn over the cash value of Sheam Moody, Jr.'s interest in the enterprise. The trustee’s complaint sets forth these demands as separate causes of action, with the first cause of action containing his request for a turnover order, and the second cause of action stating his requests for a declaration that the Seaside Lanes partnership has been dissolved and for an order requiring a winding up and accounting.
But the bankruptcy court has not yet determined whether the trustee is entitled to a turnover order, much less actually entered such an order. Indeed, since turnover is statutorily permissible only once the property in question has been determined not to be of “inconsequential value or benefit to the estate,” 11 U.S.C. § 542(a), the bankruptcy court cannot finally decide this issue until Seaside Lanes completes the ordered accounting of its assets and liabilities. Only then will the court be able to determine whether the cash value of Shearn Moody, Jr.’s interest is of consequential value or benefit to his bankruptcy estate,[7] and, hence, only then will it be able to resolve with finality the trustee’s claimed entitlement to turnover of that interest.[8] Consequently, there are still issues pending between the trustee and the defendants with respect to the “discrete dispute” represented by the separate adversary action involved here. The existence of these remaining issues, yet to be settled by the bankruptcy court, leads us to conclude that the order entered by the bankruptcy court did not finally determine *87 the rights of the trustee to secure the relief requested in his complaint.[9]
We are reinforced in our conclusion by our belief that the result serves the laudatory goal of avoiding piecemeal appeals. See County Management, 788 F.2d at 314; Delta Servs. Indus., 782 F.2d at 1269. Too much is left for the bankruptcy court to do in this case for us to have confidence that no further appeals would be generated from this single adversary proceeding were we to allow an appeal now. The likelihood that the bankruptcy court’s resolution of the issues still pending will alter, or even moot, the issues that would be raised on appeal from the court’s Memorandum and Order is too great to make an immediate appeal efficient. See In re Fox, 762.F.2d 54, 55 (7th Cir.1985) (remand order is not final unless all that remains for bankruptcy court to do is a “purely mechanical, computational, or in short ‘ministerial’ task, whose performance is unlikely to generate a new appeal or to affect the issues that the disappointed party wants to raise on appeal”).
The appellants further argue that even if the bankruptcy court order is not technically final for purposes of appeal within the meaning of 28 U.S.C. § 158(a) and the case law interpreting it, it should be deemed an appealable, final order under one of the judge-made exceptions to finality recognized in ordinary civil litigation. Specifically, the appellants contend that the case is appropriate for review under the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), or under the principles announced in Forgay v. Conrad, 47 U.S. (7 How.) 201, 12 L.Ed. 404 (1848). Although we, like other Circuits, have applied Cohen and Forgay in considering bankruptcy appeals under section 158, we conclude that the present appeal does not fit within the exceptions to the final judgment rule espoused by either of those cases. See, e.g., Delta Servs. Indus., 782 F.2d at 1272-73; Growth Realty Cos. v. Regency Woods Apartments (In re Regency Woods Apartments), 686 F.2d 899, 902-03 (11th Cir.1982); see also Four Seas Center v. Davres, Inc. (In re Four Seas Center), 754 F.2d 1416, 1419 (9th Cir.1985) (applying Cohen and Forgay to bankruptcy appeal under predecessor to section 158); cf. Firestone Tire & Rubber Co. v. Goldblatt Bros. (In re Goldblatt Bros.), 758 F.2d 1248, 1251-52 (7th Cir.1985) (consider *88 ing Cohen but declining to decide whether it applied to bankruptcy appeal because it would not allow appeal under facts of case in any event).
For an order to be reviewable under the Cohen exception to the final judgment rule, it must satisfy at a minimum three conditions: it must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). These requirements are conjunctive; failure to satisfy any one makes the case unreviewable under the collateral order doctrine. Delta Servs. Indus., 782 F.2d at 1272.
Whether or not the order before us is “conclusive” and “separable,” we do not think the appellants have shown that it resolves an important issue that is effectively unreviewable on appeal from a final judgment. Once the bankruptcy court decides whether Seaside Lanes must turn over the value of Shearn Moody, Jr.’s interest in the partnership to the trustee, and thereby decides the issues still pending between the trustee and the appellants, there will be a final judgment appealable as of right under 28 U.S.C. § 158(a).[10] At that point, the appellants will be able to appeal the bankruptcy order that they want to appeal now. In order to satisfy Cohen, therefore, the appellants must demonstrate a need for a more immediate appeal. This they have not done.
The bankruptcy court’s order states that the partners are obligated to wind up the affairs of Seaside Lanes and to render an accounting, which “should proceed in accordance with the Texas Uniform Partnership Act.” If Seaside Lanes were a going business, then an order to proceed with dissolution might raise an issue of the partnership’s viability that would be unreviewable later, after dissolution and winding up. But here the appellants do not contend that Seaside Lanes was an ongoing partnership; indeed, they argued to the bankruptcy court that its order was unnecessary because the partnership had been dissolved soon after it sold the bowling alley and distributed the sale proceeds. None of the parties deny either the partnership’s existence or its dissolution prior to the filing of the complaint in this case. Thus, although we can see that a bankruptcy court’s order to dissolve and account would affect the relationship among the non-debtor partners as well as their relationship with Shearn Moody, Jr., and thereby possibly cause irreparable harm to an ongoing business, we find no such interference in the present order. Since the appellants have not shown that they will suffer any irreparable injury to an “important interest” from having to wait until the bankruptcy court rules on the trustee’s remaining cause of action before appealing, we conclude that the order from which this appeal is sought does not fall within the Cohen exception.
The nature of the bankruptcy court’s order also removes it from the class of cases appealable under Forgay. In For-gay, an assignee in bankruptcy sued to set aside allegedly fraudulent conveyances and to obtain an accounting of profits. The district court directed the appellant to deliver the property to the plaintiff immediately and to then make the accounting. Because delaying appeal would have subjected the appellant to the irreparable harm of having had the property sold and the sale proceeds delivered to the bankrupt’s *89 creditors, the Supreme Court held that the order compelling the transfer of the property could be appealed, notwithstanding the fact that an accounting remained to be performed before the case would be technically final. 47 U.S. (7 How.) at 204, 12 L.Ed. 404.
Forgay differs from this case in that here no property has been ordered turned over to the trustee, or to anyone else. Moreover, as noted above, the appellants have not shown that they will be irretrievably injured absent immediate appellate review. Consequently, neither the situation actually presented in Forgay nor the more general “hardship” exception that the case has come to stand for, see Huckeby v. Frozen Food Express, 555 F.2d 542, 546-49 (5th Cir.1977); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3910 (1976), provide a basis for holding that the bankruptcy court’s October 27, 1986, order was a final, appealable order.
Conclusion
The bankruptcy court’s October 27 order was not a final order appealable as of right under 28 U.S.C. § 158(a). We therefore affirm the district court’s dismissal of this appeal.[11]
AFFIRMED.

. Our jurisdiction over this appeal is governed by 28 U.S.C. § 158(d). This provision, enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984), supersedes 28 U.S.C. § 1291 when a bankruptcy dispute is heard initially in a bankruptcy court, rather than before a district court sitting as a trial court. See Smith v. Revie (In re Moody), 817 F.2d 365, 366 & n. 2 (5th Cir.1987). Under section 158(d), the courts of appeal have jurisdiction of appeals from "final decisions, judgments, orders and decrees" entered by a district court hearing an appeal from a bankruptcy court.

. The district court in this case declined to grant leave for an interlocutory appeal, but the appellants have not challenged that holding. We are therefore not called upon to review the district *85 court’s failure to exercise its discretion to allow an interlocutory appeal. Accordingly, we express no opinion about either the merits of the district court’s refusal or our jurisdiction to review that denial of leave to appeal. See Smith v. Revie (In re Moody), 817 F.2d 365, 366 (5th Cir.1987).

. Under the final judgment rule of 28 U.S.C. § 1291, which governs appeals in ordinary civil cases, finality is generally absent until the district court renders a decision that "‘ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.’” Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). As the Ninth Circuit has noted, strictly applying this standard in the bankruptcy context would mean that "the only truly final order in a bankruptcy proceeding occurs when the order closing the case is filed.” Mason v. Integrity Ins. Co. (In re Mason), 709 F.2d 1313, 1316 (9th Cir.1983).

. Cf. Moody, 817 F.2d at 367-68 (proceeding to compel defendant to turn over property in his possession to bankruptcy trustee is separate adversary proceeding upon the conclusion of which an appeal may be taken); King v. Stanton (In re Stanton), 766 F.2d 1283 (9th Cir.1985) (once finally resolved by bankruptcy judge, proceeding by partner against debtor co-partner seeking dissolution of partnership and accounting is a discrete judicial unit within larger bankruptcy case from which an appeal may be taken).

.As we have said in the context of a bankruptcy appeal brought under the statutory predecessor to section 158, "[a] final judgment is one that disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree.” Stewart v. Kutner (In re Kutner), 656 F.2d 1107, 1110 (5th Cir. Unit A 1981) (quoting City of Louisa v. Levi, 140 F.2d 512, 514 (6th Cir.1944)), cert. denied, 102 S.Ct. 1443 (1982); accord In re American Colonial Broadcasting Corp., 758 F.2d 794, 801 (1st Cir.1985).

. See, e.g., Stanton, 766 F.2d at 1286 (bankruptcy court order deciding plaintiffs claims for dissolution of partnership and for accounting and defendant’s counterclaim for breach of partnership agreement was final and appealable because it "left nothing to be resolved" and "ended the adversary proceeding'); Walther v. King City Transit Mix (In re King City Transit Mix), 738 F.2d 1065 (9th Cir.1984) (bankruptcy court order dismissing one of four counts of defendant’s counterclaim was interlocutory; plaintiffs claim and three counts of counterclaim had not yet been disposed of).

. It is conceivable that Seaside Lanes has already distributed to Shearn Moody, Jr. substantially all of his share of the partnership's assets. The evidence of record indicates that the partnership’s most valuable asset, the bowling alley, has been sold and the proceeds distributed. The two remaining assets, the service station and office building, generate approximately $2,000 in monthly rental income. It appears that all the rental income received prior to January 1986 has been distributed, so that the only remaining undistributed profits may be the rental income generated since that date and the value of the land and buildings themselves. Alternatively, it may be that only the rental income will be deemed partnership profits, with the former partners’ ownership interest in the land and buildings reverting back to ownership in joint tenancy upon dissolution of the partnership. Especially if the bankruptcy court determines that Shearn Moody, Jr.’s undistributed partnership interest is limited to his share of rental income received by the partnership since January 1, 1986, minus expenses, his interest may well be found by the court to be of inconsequential value and benefit to the estate.

.In order conclusively to decide whether the trustee is entitled to a turnover order, the bankruptcy court may also have to make other additional factual and legal findings. Since section 542 allows a trustee to compel a non-debtor entity to turnover only "property that the trustee may use, sell, or lease under section 363 [of the Bankruptcy Code], or that the debtor may exempt under section 522,” the bankruptcy court must determine that Shearn Moody, Jr.'s partnership interest satisfies these conditions.
Moreover, even the court’s order mandating the Seaside Lanes partnership to wind up its affairs and render an accounting to the trustee is of questionable finality. The order states that if the trustee, Robert Moody, and Frances Moody Newman "cannot arrive at a suitable resolution, they may seek a court order on the winding up and accounting of Seaside Lanes partnership affairs." The order thus is more in the nature of a declaration of the right to an accounting, rather than actually ordering or enjoining such, and likewise contemplates continued supervision by the bankruptcy court over the winding up and accounting, if necessary. The tentativeness of the order in these respects further supports our conclusion that it was interlocutory in nature. See Delta Servs. Indus., 782 F.2d at 1271.

. Although we are aware of no published decisions presenting precisely the character of the situation we have here, cases dealing with fairly analogous facts support our determination that the order entered by the bankruptcy court in this case was interlocutory. For example, in County Management, a panel of this Court held that a district court order in a case with similar facts was interlocutory. 788 F.2d at 311. The plaintiff debtor in County Management brought a separate adversary proceeding in bankruptcy court, in which he sought (1) a declaration that a mineral lease executed by a receiver upon land in which he claimed a joint ownership interest in the mineral rights was null and void, (2) an order compelling the receiver-lessor to turn over his share of profits from the mineral lease, and (3) an accounting from the receiver-lessor of all funds received under the mineral lease. Id. at 312. The bankruptcy court held that the lease was valid and, therefore, denied the debtor’s requests for turnover and accounting. On appeal, the district court reversed (holding that the lease was invalid) and remanded for an accounting and for a determination of the propriety of a turnover order. Because the bankruptcy court would have to make additional factual and legal findings in order to decide the turnover issue, this Court held that the district court’s order was not a final appealable order. Id. at 314. Furthermore, the Court stated, even if only an accounting had remained for the bankruptcy court to supervise, the district court’s order still would not have been final. Id. (citing In re Goldblatt Bros., 758 F.2d 1248, 1250 (7th Cir.1985) (order determining rights and liabilities of the parties and remanding for an accounting is interlocutory unless the, accounting is merely mechanical or ministerial)).
In addition, although not controlling in this federal suit, a number of Texas cases dealing with suits to establish ownership interests in a partnership and to require an accounting have held that a decree ordering a winding up and accounting of a partnership is not a final, ap-pealable judgment, at least not where further action by the court is necessary to give the plaintiff complete relief. See, e.g., Sterett v. Dyer, 230 S.W.2d 461 (Tex.Ct.App.—San Antonio, 1950, writ ref'd); Bailey v. Shaw, 26 S.W.2d 669 (Tex.Ct.App.—Austin 1930, writ refd). But cf. Ferguson v. Ferguson, 161 Tex. 184, 338 S.W.2d 945, 947-48 (1960) (judgment ordering accounting and payment to plaintiff of one-half of profits of defendants’ cattle trading business held final, where there were no "other equities or rights of the parties to be determined by the court”).

. The appellants argue in their brief that unless they and the trustee are unable to agree on an accounting and winding up, no further order by the bankruptcy court is contemplated. Since no other orders may be entered concerning Shearn Moody, Jr.’s interest in the partnership, they argue, they may never have an opportunity to appeal the bankruptcy court's ownership determination if the present order is not now deemed final for appealability purposes. This argument lacks merit. As noted above, the bankruptcy court order addresses only one of the two causes of action alleged in the trustee’s complaint. The bankruptcy court still has to decide whether the trustee is entitled to his request for a turnover, under 11 U.S.C. § 542, of the value of Shearn Moody, Jr.’s interest in Seaside Lanes. After the bankruptcy court decides the trustee’s claimed right to turnover, the parties can appeal to the district court from any of the bankruptcy court’s orders in this adversary proceeding.

. We clearly have jurisdiction to determine whether the bankruptcy court’s order was final. But it is not entirely clear to us whether once we have determined that the order was not final, we should dispose of the case by dismissing the appeal for want of a final order or by affirming the district court’s order of dismissal. See 15 C. Wright, A. Miller & E. Cooper, supra, § 3914 (describing jurisdictional rule for appeal from a district court’s denial of a motion to intervene under Fed.R.Civ.P. 24(b); appellate court can reverse if the trial court erroneously denied intervention, but if the denial was proper, appellate court must dismiss appeal because order was non-appealable, interlocutory order); see also, e.g., Bush v. Viterna, 740 F.2d 350, 351 n. 1 (5th Cir.1984); New Orleans Public Serv. v. United Gas Pipe Line Co., 732 F.2d 452, 473 (5th Cir.), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). But see, e.g., Commonwealth of Pa. v. Rizzo, 530 F.2d 501, 504 (3d Cir.1976) (refusing to follow above rule). The rule that an appellate court has "provisional jurisdiction” to determine whether a district court erroneously disallowed permissive intervention, but that if the district court was correct the appellate court must dismiss the appeal for want of jurisdiction, has been justly described as anomalous. See, e.g., EEOC v. Eastern Airlines, 736 F.2d 635, 637 (11th Cir.1984); Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977). Since it makes appealability turn on the merits of the issue being appealed, the rule also has been criticized as not providing "a very effective or useful limitation of appellate jurisdiction.” 7C C. Wright, A. Miller & M. Kane, supra, § 1923 (quoting Levin v. Ruby Trading Corp., 333 F.2d 592, 594 (2d Cir.1964)). We see no reason to extend the rule to appeals in the bankruptcy context. In any event, whether we affirm the district court or dismiss the appeal makes no practical difference to the outcome of this case.